UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Solheim Farms, Inc.,                                    Civil No. 06-438 (PAM/RLE)

                         Plaintiff,

v.                                                      **MEMORANDUM AND ORDER**

CNH America, LLC, f/k/a
Case, LLC, a foreign corporation,

                         Defendant.

_____

This matter is before the Court on Defendant's Motion for Summary Judgment.  For
the reasons that follow, the Court grants the Motion.

## BACKGROUND

This action results from a fire that destroyed a tractor manufactured by Defendant
CNH America, LLC and owned by Plaintiff Solheim Farms, Inc.  In the Complaint, Solheim
Farms asserted three causes of action: strict product liability, negligence, and breach of
implied warranties.  On December 28, 2006, the parties filed a stipulation to dismiss the strict
product liability and negligence claims.  Accordingly, only the breach of implied warranties
claim remains.

**A.      The STX-500 Tractor**

Solheim Farms operates a 6500 acre farm near Crookston, Minnesota.  In December
2003, Solheim Farms purchased a Case IH STX-500 tractor.  On November 16, 2004, a fire
occurred on the tractor.  Scott Champagne, the operator of the tractor, first observed flames
in front of the tractor cab on the lower right side and above the air cleaner.  The fire quickly
surged and engulfed the tractor.

When Solheim Farms purchased the tractor, the tractor was equipped with shields on the side of the engine compartment.  The shields are designed to keep crop residue out of the engine compartment and off the hot exhaust components, thereby preventing a fire.  However, Elliot Solheim removed the shields because they inhibited him from performing routine maintenance on the tractor.  He did not know that removing the shields could cause debris to build up in the engine compartment or that the shields were designed to prevent fires.  Rather, he believed that the shields were in place as a guard for potential personal injuries.

The operator manual of the tractor warns that trash accumulation on the tractor may cause damage and fire.  It therefore instructs users to clean the tractor of field trash "daily or more frequently, depending on conditions."  (Hadac Aff. Ex. 1 (Overmann Dep.) at 77; Kerpan Aff. Ex. A at 14.)  However, the manual does not specifically warn that trash accumulated in the engine compartment may cause a fire.

After the November 2004 fire, Solheim Farms purchased a replacement STX tractor.  While operating the replacement tractor, Champagne observed a smoldering or glow in the same general area of the air cleaner.  However, he did not observe any actual flames.

**B.      Previous Fires**

Between 2000 and 2003, CNH America received ten to twenty reports of fires that occurred when trash or stalk-type material contacted hot exhaust components of a tractor engine and set fire to the material that accumulated in engine compartments.  CNH America Engineer Bob Overmann investigated the fires.  He did not determine what caused the fires,

but stated that the three most likely areas of ignition were the exhaust manifold, the turbocharger, and the exhaust piping.

After investigating these fires, Overmann recommended that CHN America install the trash shields.  CNH America began installing the trash shields on tractors in December 2003. Since then, CNH America has not received any reports of fires in the engine compartment area.

## C.    Expert Opinion

Solheim Farms alleges that CNH America breached implied warranties of merchantability and fitness, and that its breach caused the tractor fire.  It proffers the opinion of Jerry Tasa to establish causation.  Tasa obtained a mechanical engineering degree from North Dakota State University and has thirty-three years of experience conducting fire investigations, including more than forty investigations of tractor and combine fires.

In his expert report, Tasa stated that the tractor manufacturing industry has known for years that trash can accumulate in the engine compartments of tractors and can ignite when the trash contacts hot exhaust components. (Hadac Aff. Ex. 8 at 1.)  Relating to the fire at issue, Tasa identified the cause of the fire as an accumulation of field trash on the air cleaner. (Id. at 2.)  In particular, he surmised that the turbo charger, exhaust pipe, or exhaust manifold ignited field trash, and that an air stream then carried the ignited trash to the air cleaner cavity area.  (Id.)  The ignited trash then contacted other field trash that had accumulated on the air cleaner, which resulted in the fire that destroyed the tractor.  (Id.)  Based on this theory, Tasa opined that the fire would have been prevented if the cavity above the air cleaner had been covered to prevent trash from entering and accumulating in that area.  (Id.)

Tasa based his conclusions on his examination of the fire scene and the tractor; his interviews of Elliot Solheim and Champagne; his review of the operator manuals for the tractor and engine; his examination of newer models of CNH America tractors; his examination of photographs of the tractor; and his review of temperature data disclosed by CNH America. He also considered temperature tests he previously conducted on non-Case tractors. In addition, he relied heavily on the following testimony provided by Overmann: (1) CNH America was aware of ten to twenty fires that occurred in CNH America tractors between 2000 and 2003; (2) the turbocharger, exhaust manifold, and exhaust piping are the most likely areas to cause a fire if trash accumulates in the engine; (3) the temperature on the turbocharger may range from 1200 degrees to 1500 degrees Fahrenheit; and (4) it is possible for the turbocharger to ignite airborne trash and for air currents to carry the ignited trash to an area under the tractor cab. Finally, Tasa considered the smoldering Champagne observed on the replacement tractor.

**DISCUSSION**

CNH America argues that Tasa's opinion is inadmissible under the principles espoused in Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579 (1993), and Kumho Tire Co. v. Carmichael, 526 U.S. 137 (1999), and codified in Federal Rule of Evidence 702. It further submits that, without the expert opinion, Solheim Farms cannot establish causation and the breach of implied warranties claim must fail.

## A.  Rule 702

The Court must ensure that all scientific testimony is both reliable and relevant. Daubert, 509 U.S. at 583; Fed. R. Evid. 702.  The inquiry as to the reliability and relevance of the testimony is "a flexible one" designed to "make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field."  Kumho Tire Co., 526 U.S. at 152.   Expert testimony is inadmissible if it is speculative, unsupported by sufficient facts, or contrary to the facts of the case.  Concord Boat Corp. v. Brunswick Corp., 207 F.3d 1039, 1056-57 (8th Cir. 2000).

To satisfy the reliability requirement, Solheim Farms must show by a preponderance of the evidence both that Tasa is qualified to render the opinion and that the methodology underlying his conclusions is scientifically valid.  Daubert, 509 U.S. at 589-90.  Daubert identifies nonexclusive factors for courts to consider when determining whether the expert opinion is reliable: (1) whether the theory or technique can be (and has been) tested; (2) whether the theory or technique has been subjected to peer review and publication; (3) the known or potential rate of error; and (4) whether the theory has been generally accepted. Daubert, 509 U.S. at 593-94.

To show that the expert testimony is relevant, Solheim Farms must show that the reasoning or methodology in question is applied properly to the facts at issue.  Id. at 593. Courts should resolve doubts regarding the usefulness of an expert's testimony in favor of admissibility.  Clark v. Hendrick, 150 F.3d 912, 915 (8th Cir. 1998); see also Arcoren v. United States, 929 F.2d 1235, 1239 (8th Cir. 1991) (noting that Rule 702 clearly "is one of

admissibility rather than exclusion"). However, the Court should not admit opinion evidence that "is connected to existing data only by the ipse dixit of the expert." Gen. Elec. Co. v. Joiner, 522 U.S. 136, 146 (1997). When the analytical gap between the data and proffered opinion is too great, the opinion must be excluded. Id.

The Court concludes that Tasa's opinion is neither reliable nor relevant. The opinion is unreliable because Tasa failed to perform any tests to verify his causation theory. Courts have excluded expert opinion under similar circumstances. See, e.g., Erpelding v. Skipperliner Indus., Inc., No. 99-16, 2002 WL 31014823, at *2 (D. Minn. Sept. 5, 2002) (Frank, J.) (proposed expert testimony that wiring of electrical system caused fire excluded because it was not sufficiently derived by a reliable scientific method); Am. Family Ins. Group v. JVC Am. Corp., No. 00-27, 2001 WL 1618454, at *1-*4 (D. Minn. Apr. 30, 2001) (Doty, J.) (expert testimony excluded because the expert made no attempt to determine through independent research and testing whether the purported cause of a fire could occur, whether it could produce the fire, or how much stress was required to generate sufficient heat to produce fire); Harvest States Coop. v. Phillips & Temro Indus., Inc., No. C1-99-1784, 2000 WL 760423, at *2 (Minn. Ct. App. June 13, 2000) (causation expert excluded because expert did not simulate the conditions that allegedly caused the fire). As the court in American Family Insurance Group explained:

> Both Daubert and Kumho make it clear that the day of the expert, who merely opines, and does so on basis of vague notions of experience, is over. Experts are now held to a level of accountability that requires factual predicates, in historical fact, or in competent evidence, which allows a factfinder to independently verficy the accuracy of the expert's results. Absent such reliable verification, the expert's opinion is not admissible.

2001 WL 1618454, at *4 (citing Kemp v. Tyson Seafood Group, Inc., No. 5-96-173, 2000 WL 1062105, at *7 (D. Minn. July 19, 2000) (Erickson, Magistrate J.)).

In this case, Tasa did not perform any testing to verify his theory. He did not test an exemplar tractor to determine if trash accumulates in the air cleaner area, whether such an accumulation could produce a fire, or how much accumulation and air current are necessary to start a fire. Moreover, although Tasa previously conducted temperature tests on other tractors, he did not account for differences between the tested tractors and the STX tractor, and did not test a STX tractor or any other Case tractor. He provided no other engineering analysis to support his theory or study linking the cause of an air cleaner fire to trash that was ignited by a hot engine component.

Because Tasa did not conduct any experiments or testing of any kind, there cannot be a known rate of error for his results. Likewise, there is no evidence offered concerning a potential rate of error. Moreover, there is no testimony regarding the general acceptance of either his theory or his methodology. See Pro Serv. Auto., L.L.C. v. Lenan Corp., 469 F.3d 1210, 1215-16 (8th Cir. 2006) (exclusion of expert opinion proper when expert provided no testing or other engineering analysis to support his causation opinion); see also Peitzmeier v. Hennessy Indus., Inc., 97 F.3d 293, 298 (8th Cir. 1996) (expert opinion properly excluded because expert did not conduct any experiments or testing). The complete lack of testing renders Tasa's opinion unreliable.

Solheim Farm relies on Lauzon v. Senco Products, Inc., 270 F.3d 681 (8th Cir. 2001), where the Eighth Circuit Court of Appeals reversed summary judgment on the ground that the proffered expert testimony was reliable and relevant. That case is distinguishable,

however, on a number of grounds.  First, the expert performed a number of tests to verify his conclusions.  Id. at 688-89, 692.  He examined photographs of the incident, measured the trigger force and nail speed of the nail gun, reproduced the section of the roof, and reenacted the tasks that the plaintiff was performing when the incident occurred.  Id.  The expert also authored an article prior to litigation that was consistent with his opinion, and provided other peer literature in support of his opinion.  Id. at 690.  The opinion comported with opinions generally accepted by the relevant scientific community.  Id. at 691-92.  Finally, the expert discounted obvious alternative causes through scientific testing.  Id. at 693-94.  None of these steps were taken in this case.  Thus, Lauzon provides no help to Solheim Farms.

In addition to being unreliable, Tasa's opinion is also irrelevant because the facts of the case do not support Tasa's theory.  Tasa surmised that field trash ignited when it contacted either the turbo charger, exhaust pipe, or exhaust manifold and then traveled to the air cleaner cavity where it ignited more trash.  However, there is no evidence that trash contacted an engine component, that an engine component of the tractor initially started the fire, that any burning field trash migrated to the air cleaner, or that trash had accumulated in the air cleaner.  In fact, Elliot Solheim testified that debris did not accumulate near the turbo charger and that he did not know of any debris built up on top of the air cleaner.  Likewise, there is no evidence to support the theory that an air stream carried ignited trash to other trash accumulated on the air cleaner cavity.

Tasa construes Overmann's testimony as an admission of causation.  However, Overmann testified only that it is possible for an exhaust component to ignite field trash and for an air current to carry ignited trash back to the engine compartment.  He provided no

evidence that those events occurred in this case.  Likewise, Tasa places too much weight on evidence of fires that occurred between 2000 and 2003 and the smoldering incident that occurred in the replacement tractor.  None of that evidence proves causation in this case. Simply put, Tasa takes too great a leap in trying to connect this evidence to prove his theory.

Finally, Tasa did not consider any other possible causes of the fire, such as owner or operator negligence or inadequate maintenance.  In particular, he completely ignored Elliot Solheim's removal of the trash shields, which were designed to prevent field trash from contacting the hot engine components, just prior to the fire.  Because Tasa failed to properly apply his theory to the facts of this case, his opinion is not relevant.  Because his opinion is neither reliable nor relevant, the Court excludes the opinion under Rule 702.

**B.     Summary Judgment**

Summary judgment is proper when the evidence viewed in a light most favorable to the nonmoving party demonstrates that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  Thus, only disputes of fact that might affect the outcome of the suit under the governing substantive law will preclude summary judgment.  Id.

The moving party bears the burden of showing that there are no genuine issues of material fact and that the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  The nonmoving party is entitled to all inferences that may be reasonably drawn from the underlying facts in the record. Meriwether v. Caraustar Packaging Co., 326 F.3d 990, 992-93 (8th Cir. 2003).  However,

the nonmoving party may not merely rest upon allegations or denials in its pleadings—it must set forth specific facts showing that there is a genuine issue for trial. <u>Anderson</u>, 477 U.S. at 256.

To establish breach of implied warranty, Solheim Farms must show that CNH America breached the warranty and that the breach caused the loss sustained. <u>Int'l Fin. Servs., Inc. v. Franz</u>, 534 N.W.2d 261, 266 (Minn. 1995) (citation omitted). Circumstantial evidence "may be sufficient to show the causal relationship between the product and the injury which followed its use." <u>Id.</u> (citation omitted). However, "to survive summary judgment, inferences must be reasonably supported by the available evidence; sheer speculation is not enough, and the inference of causation must outweigh contrary inferences." <u>Am. Family Ins. Group</u>, 2001 WL 1618454, at *5 (citations and internal marks omitted).

Solheim Farms's causation theory is based only on speculation derived from circumstantial evidence. Because Solheim Farms has failed to show anything more than theoretical possibilities to prove causation, summary judgment on the breach of implied warranties claim is appropriate.

**CONCLUSION**

Solheim Farms has failed to present sufficient evidence to show causation, a necessary element in its breach of implied warranties claim. Accordingly, **IT IS HEREBY ORDERED** that:

1.    CNH America's Motion for Summary Judgment (Docket No. 38) is **GRANTED**; and

2.      The breach of implied warranties claim under Count III of the Complaint is

**DISMISSED with prejudice**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated: February 28, 2007

s/ Paul A. Magnuson
Paul A. Magnuson
United States District Court Judge